UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE BRANHAM CORPORATION, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) Case No. 1:15-cv-00604-RLY-TAB |
| | ) |
| BOONE COUNTY UTILITIES, LLC, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| IN RE: BOONE COUNTY UTILITIES, | ) |
| | ) Bankruptcy Court Cause No. |
| Debtor. | ) 03-16707-RLM-11 |
| | ) |
| THE BRANHAM CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adversary Proceeding Nos. |
| vs. | ) 12-50128 and 14-50168 |
| | ) |
| BOONE COUNTY UTILITIES, LLC, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING BANKRUPTCY COURT'S DECISIONS**

The Branham Corporation ("Branham") appeals from several orders of the

bankruptcy court. These appeals involve separate proceedings and issues spanning

several years in both federal and state courts. However, the issues, though numerous, are

not complex. The court therefore finds oral argument unnecessary and denies Branham's

request for oral argument.  For the reasons that follow, the bankruptcy court's decisions

will be affirmed in part and remanded for further proceedings with respect to sanctions.

## I.    BACKGROUND[1]

A development firm, Newland Resources, LLC ("Newland"), hired Branham to

assist in obtaining water and sewer utility service for a project in Boone County, Indiana.

Newland formed Boone County Utilities, LLC ("BCU") to operate the project.  Newland

is the sole owner and member of BCU.  In late 1995, Newland and Branham entered into

a contract under which Branham was to be paid fees and expenses for securing the utility

services, including a success fee.  Newland has not paid Branham its success fee.

BCU was a private utility company regulated by the Indiana Utilities Regulatory

Commission ("IURC").  In late 2001, the Board of Commissioners of Boone County

petitioned the IURC to revoke BCU's certificates of territorial authority.  The IURC

issued an interim order, directing Newland to pay BCU a cash equity infusion.  The

IURC set a compliance hearing to be held within 90 days.

On September 8, 2003, BCU filed a petition for relief under Chapter 11 of the

United States Bankruptcy Code in the United States Bankruptcy Court, Bankruptcy Court

Case No. 03-16707-AJM-11.  Branham filed several proofs of claims against the

bankruptcy estate based on the contract between Branham and Newland.  BCU is not a

party to that contract.  The first three claims were filed on May 11, 2004 and September 9

and 10, 2004; the fourth claim was filed on May 17, 2005.

---

[1] A lengthy background is necessary to provide the appropriate context for these appeals.

BCU moved to sell its assets. A month later, the IURC made certain orders requiring BCU to do certain things. A jurisdictional skirmish ensued between the IURC and bankruptcy court. However, in its February 5, 2004 entry, the IURC noted that the Bankruptcy Court "will direct the sale of the utility [BCU] and the distribution of proceeds thereof[.]" [Filing No. 18-3, Branham App. 2594]. Then on February 25, 2004, the IURC, "recogniz[ing] that the United States Bankruptcy Court has the full power and exclusive jurisdiction to conduct the sale of [BCU's] assets," stayed all proceedings before the IURC involving BCU. [Filing No. 7-2 at ECF p. 65-66]. The court will refer to this order as the "stand down" order. The stand down order stated it "shall be effective on and after the date of its approval," which was on February 25, 2004. [*Id.*]

BCU obtained authority to sell its assets to the Town of Whitestown for $4,200,000. The bankruptcy court approved the sale, and the sale closed on July 20, 2004. BCU received $3,891,645 in net sale proceeds. After the closing on the sale, BCU ceased its operations as a regulated entity.

The bankruptcy court held a confirmation hearing on September 14, 2004, and entered an Order Confirming Debtor's Amended Liquidating Plan of Reorganization ("Confirmation Order"), over Branham's conditional objection. [Filing No. 9-1, Branham App. 17-20]. The bankruptcy court disallowed three of Branham's claims because they were based on a contract to which the debtor BCU was not a party; it disallowed the fourth claim, filed months after the claims bar dates and the day before the hearing on claims, as untimely. The Confirmed Amended Plan ("Plan") provided for the balance of the sale proceeds to be paid to Newland for its equity interest after payment of

all other allowed claims. Branham was not listed as a secured creditor because Branham was not a creditor of BCU. The Confirmation Order stated that "the Plan and its provisions shall bind the Reorganized Debtor, any entity acquiring estate property under the terms of the Plan, [and] all creditors of and claimants against Debtor …." [Filing No. 9-1, Branham App. 20]. The order also said that the bankruptcy court "shall retain jurisdiction over the Chapter 11 case for the purposes set forth in the Plan." [*Id.*]

On the Confirmation Date, BCU made a distribution to Newland of approximately $2.5 million, leaving a balance of over $1 million in its account. A second distribution was made to Newland in May 2005; Newland received approximately $3 million in distributions under the Plan.

Branham appealed to the district court, which affirmed. *See In re Boone Cty. Utils, LLC*, Case No. 1:05-cv-01173-LJM-WTL. Branham appealed to the Seventh Circuit Court of Appeals, which also affirmed. *See In re Boone Cty. Utils., LLC*, 506 F.3d 541 (7th Cir. 2007) (holding claims based on contract to which debtor was not a party were properly disallowed and bankruptcy court did not abuse its discretion in disallowing untimely unjust enrichment claim). Branham sought rehearing and rehearing en banc, which requests were denied. Branham did not move the bankruptcy or district court to stay payment of the distributions due to Newland under the Plan.

On July 1, 2011, BCU's bankruptcy case was closed.

Meanwhile, in October 2005, Branham sued Newland in Boone Circuit Court to collect its success fee. In November 2007, Branham obtained a judgment against Newland in the amount of $397,853.92. Newland appealed, but did not seek a stay of the

judgment. Thus, the judgment was enforceable, notwithstanding the appeal. The Indiana

Court of Appeals affirmed. *Newland Resources, LLC v. Branham Corp.*, 918 N.E.2d 763

(Ind. Ct. App. 2009). Before Branham obtained the judgment against Newland, it knew

that Newland had insufficient assets to satisfy the judgment.[2]

On December 29, 2011, Branham filed a Verified Motion for Proceedings

Supplemental to Execution and Garnishment in Boone Circuit Court in Cause No.

06C01-0409-PL-517 (the "517 Case"), naming BCU and Newland, as party garnishee-

defendants, among others. [Filing No. 9-6, Branham App. 842-912].[3] Branham alleged

that the distributions made by BCU to Newland were unauthorized under the plan and

that the transfer of property was void *ab initio* and in violation of IURC orders and state

business law. Branham sought to recover all monies paid out under the Plan to allowed

claimants and professionals.

The next day, December 30, 2011, Branham filed a complaint for damages against

Newland and numerous others in Boone Circuit Court, Cause No. 06C01-1201-CT-0001

(the "001 Case"). The complaint alleged that Newland's distributions of the BCU sale

---

[2] Newland made distributions in 2004-2005 that depleted its corporate assets. In August 2007 Branham took a Rule 30(b)(6) deposition at which Jim Harmon, Newland's corporate designee, testified that after Newland's distributions, Newland and BCU jointly had less than $10,000 in assets. *See Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979, 990-91 (Ind. Ct. App. 2014).

[3] Like the bankruptcy court, which characterized the proceedings supplemental motion as going "far beyond simply asking for garnishment of funds the garnishee defendant might have owed Newland" (Filing No. 18-6, Branham App. 3522], the Indiana Court of Appeals determined the motion for proceedings supplemental was actually "much more than that." *Branham Corp. v. Newland Res., LLC*, 44 N.E.3d 1263, 1270 (Ind. Ct. App. 2015). Still, Branham is correct that the state court also found that the proceedings supplemental motion "requests only the kind of relief available through Trial Rule 69(E). *Id.* at 1272. Nonetheless, the state court also determined the motion "raises many new issues in the process of asserting its entitlement to funds ...." *Id.*

proceeds were unauthorized under the Plan and were void *ab initio* in violation of IURC orders, operating agreements, and Indiana law. Branham asserted that Newland purposely depleted its assets, rendering it unable to satisfy Branham's judgment. Branham claimed fraud, deception, conversion, theft, and receiving stolen property and asserted claims under the Indiana Crime Victim Relief Act and Indiana Corrupt Business Influence Act. BCU was not named a party defendant, but BCU's principals, employees, and attorneys were named as defendants.

On April 12, 2012, in response to Branham's state court complaint and proceedings supplemental, BCU filed a Motion to Reopen its Bankruptcy Case. [Filing No. 9-7, Branham App. 1061-70]. The bankruptcy court granted the motion on April 23, 2012, and BCU filed a complaint under Adversary Proceeding No. 12-50128 ("AP-128"), naming Branham and its attorneys in the state court cases, Stewart & Irwin, P.C., as defendants. [Filing No. 9-1, Branham App. 22-33].

BCU amended its complaint in 2013. Count I sought a declaratory judgment, asking the court to affirm and give preclusive effect to various orders entered in the Chapter 11 case, including a declaration that all distributions under the Plan were authorized and lawful. BCU also sought a declaration of whether BCU has undistributed assets in which Newland has an interest. Count II sought sanctions against Branham, its principals, and its counsel for their willful, intentional, and malicious actions in prosecuting matters filed in the Boone Circuit Court against BCU.

Branham answered and filed a counterclaim. Its answer admitted that the bankruptcy court "has jurisdiction to render a declaratory judgment in this adversary

proceeding relating to the interpretation and enforcement of its orders, rulings, judgment and decrees made with respect to the petition filed by BCU [.]" [Filing No. 18-1, Branham App. 1838]. Similarly, the counterclaim asserted that the bankruptcy court has "concurrent and ancillary jurisdiction to decide whether distributions from BCU to Newland are in breach of the Amended Plan and Confirmation Order, were made prior to allowance by the Court[,] and were made without the express authorization of this Court." [Filing No. 18-1, Branham App. 1895 (citations omitted); *see also id.* at 1896 (asserting that "this [Bankruptcy] Court has jurisdiction over the assets of BCU's estate")]. The counterclaim sought a determination of whether the distributions by BCU to Newland were lawful and requested an order allowing discovery of BCU as to its assets and garnishment of Newland's property in BCU's possession.

At an August 22, 2012 hearing on the motion to dismiss for lack of subject matter jurisdiction and failure to state a claim filed by Stewart & Irwin, the parties (including Branham) stipulated that the U.S. Bankruptcy Court has concurrent and ancillary jurisdiction to construe and enforce its orders. [*See* Filing No. 23-3, Branham App. 5624, 5680]. Branham's counsel acknowledged Branham's argument was the following: the distributions to Newland under the Plan were improper and illegal because they did not comply with state law, BCU's operating agreement, the Plan itself (specifically Section 6.1), and the IURC orders, and therefore the transfer was void, and BCU still had a right to the property. [Filing No. 23-3, Branham App. 5517, 5524-26, 5534 ("I'm challenging distributions that were made that we argue, pursuant to a construction of your plan and

confirmation, were not permitted to be made in the fashion that they were made."), and 5540].

On October 4, 2012, the bankruptcy court issued an Order, acknowledging the parties' stipulation that the court "has … jurisdiction to construe and enforce its orders." [Filing No. 7-8 at ECF page no. 21]. The court determined:

> [I]t shall exercise its jurisdiction to interpret and enforce all of its orders and rulings with respect to the [BCU] Chapter 11 Bankruptcy Case from the petition date of September 8, 2003, up to and including all distributions and transfers made by [BCU] to Newland … and all matters respecting the [IURC]'s involvement in the BCU bankruptcy ….

[Filing No. 9-8, Branham App. 1209, AP-128, 10/4/2012 Order at 3; *see also* Filing No. 7-8 at ECF page no. 21]. The court granted the motion to dismiss with respect to Stewart & Irwin only, without prejudice to BCU's right to seek contempt sanctions against the attorneys if the court were to determine that its orders were "willfully disregarded in this matter." [Filing No. 7-8 at 21-22]. The court further ordered that "[a]ny issues involving [Newland's] actions upon or after receipt of the distribution from [BCU] pursuant to the amended Plan are to be decided in the Boone County Circuit Court." [Filing No. 7-8 at ECF page no. 22].

Thereafter, Branham moved to withdraw the proceedings supplemental as to BCU in the 517 Case. The trial court granted Branham leave to dismiss the proceedings without prejudice, conditioned on the payment of the garnishee defendants' attorney fees. The court of appeals affirmed. *See Branham Corp. v. Newland Resources, LLC*, 44 N.E.2d 1263 (Ind. Ct. App. 2015).

BCU moved to dismiss Branham's counterclaim in AP-128, and the bankruptcy court directed the parties to file proposed findings and conclusions. The parties did so, and they filed additional pleadings and other matters. The motion to dismiss, responses, proposed findings, and other papers referred to matters outside the pleadings. Since the motion required the bankruptcy court to consider provisions of the confirmed plan and matters outside the pleadings, the court treated BCU's motion to dismiss as a motion for partial summary judgment.[4]

On April 1, 2014, the bankruptcy court made its Proposed Findings of Fact and Conclusions of Law on Plaintiff's Motion to Dismiss Treated as a Motion Under Rule 56 and found that "all of [BCU]'s scheduled property was sold to Whitestown." [Filing No. 18-3, Branham App. 2377].[5] The court made "short work" of any alleged claims of

---

[4] The bankruptcy court did not provide notice to the parties it was treating the motion to dismiss as a motion for summary judgment, but the parties had presented matters outside the pleadings and had a reasonable opportunity to present material relevant to the motion. The parties' briefing on the motion referred to and attached matters outside the pleadings such as IURC orders, a January 5, 2005 telephonic conference, transcripts from state court proceedings, BCU's corporate reports, and the Purchase Agreement between the Town of Whitestown and BCU and Newland. The motion to dismiss and supporting memorandum were filed December 9, 2013; Branham filed its response on January 20, 2014; the bankruptcy court held a hearing on the motion on February 20, 2014; thereafter, the parties filed post-hearing briefs; the bankruptcy court ruled on the motion on April 1, 2014. Further, in its response to the legal arguments contained in BCU's supplemental exhibits submitted in support of the motion to dismiss, Branham argued that BCU's request for relief "alludes to matters outside the pleadings" and stated its non-acquiescence to converting the motion to a summary judgment motion. [Filing No. 18-3, Branham App. 2364 at 1 n.1.] All of this establishes Branham was aware the motion to dismiss referred to matters outside the pleadings and required the bankruptcy court to consider such matters in order to decide the motion.

[5] Both scheduled and unscheduled property were dealt with by the Plan. In the words of the Plan, "*All* Property of the Debtor is dealt with by this Plan." [Filing No. 9-5, Branham App. 628 (emphasis added)]. While Branham understands the bankruptcy court's findings of fact as limiting the Plan language, the findings can reasonably be read to be consistent with the Plan language. A finding that "all of [BCU]'s scheduled property was sold to Whitestown" does not exclude the mutually consistent finding that *all* of BCU's property was sold to Whitestown.

Newland against BCU, finding: "Branham is a judgment creditor of Newland and at best has only the rights of an assignee of Newland's interest in the Debtor." [*Id.* at 2381].

The court continued:

> [E]ven if Newland had any additional claims against Debtor, those were expressly waived by Newland and Branham (as Newland's judgment creditor) is enjoined from bringing them under the express terms of paragraph 11.2 [of the Plan] which provides, in part, that "All holders of Claims and Equity Interests, and their successors and assigns, shall be permanently enjoined after the Confirmation Date from asserting against the Debtor, or any of the Debtor's Property, any Claims or interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date."

[*Id.* (quoting Plan, p. 19)].

Turning to whether BCU retained any claims against Newland and whether those claims were undistributed property, the bankruptcy court determined that Branham was a "party in interest" in the bankruptcy case, had a pecuniary interest in the bankruptcy, was aware of the facts underlying its alleged claims against Newland no later than September 2004, and could have moved for appointment of a bankruptcy trustee. [Filing No. 18-3, Branham App. at 2382]. Nonetheless, Branham did not object that the Plan failed to provide for prosecution of claims against Newland, failed to move for the appointment of a trustee, and did not seek pre-judgment attachment in state court to protect its interests against Newland. [Filing No. 18-3, Branham App. 2382]. The bankruptcy court concluded that "[a]ll of the [BCU]'s property was dealt with by the Plan" and even "[a]ssuming that causes of action were preserved under the Plan and that they revested in [BCU] upon confirmation, the order confirming the … plan is *res judicata* as to all issues which were decided and which could have been decided before confirmation." [*Id.* at

2383].  The blanket reservation of rights, the court concluded, was "insufficient to

preserve … [any] state law claims against Newland."  [*Id.*]  Along with its findings of

fact and conclusions of law, the bankruptcy court entered on April 1, 2014, a Partial

Summary Judgment in AP-128, concluding:

> [T]here are no genuine issues of material fact in that the distributions made
> to Newland by [BCU] under [BCU]'s confirmed plan were not unauthorized,
> [BCU] has no assets of any kind or nature available for attachment or
> garnishment and that [BCU] is entitled to partial summary judgment as a
> matter of law on Branham's counterclaim.

[Filing No. 18-3, Branham App. 2385-86; see also *id.* at 2372-2384].

Subsequently, Branham moved to take a Rule 30(b)(6) deposition of a BCU

representative in an effort to collect on its judgment against Newland.  The bankruptcy

court determined that Newland's interest in BCU, a limited liability company, was

personal property and thus subject to execution.  However, the interest was limited by

state law to "the economic rights and nothing more."  [Filing No. 18-4, Branham App.

2899].  The bankruptcy court's order of September 17, 2014, reiterated its earlier

determination "that all of BCU's assets were distributed under the confirmed plan, as

stated in the plan, and that there were no other BCU assets to pursue or distribute as of

the date of distribution to Newland."  [Filing No. 18-4, Branham App. 2901].  Because

"the Plan unequivocally stated that all property of [BCU] was dealt with by the Plan,

there was no property left to re-vest in [BCU]."  [*Id.*]

Furthermore, the court decided that even if BCU was holding claims of third

parties that pre-dated the distributions to Newland, Newland had no claim or right to

them because Newland released claim to any assets of BCU or interest in BCU, including

equity interests, under the Plan. [Branham App. 2901-02; *see also* Filing No. 9-5, Branham App. 632]. The order reiterated that "the provisions of the confirmed plan were *res judicata* as to all issues which were decided and which could have been decided before confirmation, including whether BCU held causes [of] actions against Newland or other persons or entities." [Filing No. 18-4, Branham App. 2905]. However, the bankruptcy court concluded if BCU held claims that arose after the Confirmation Order and asset distribution, it appeared that Newland could pursue them; but Branham had no right to directly pursue such claims or to direct Newland to do so. [*Id.* at 2902].

The bankruptcy court rejected Branham's efforts to hold BCU in contempt for making $2.5 million in distributions to Newland before the expiration of the then-twenty-day stay under Bankruptcy Rule 3020(e). [Filing No. 18-4, Branham App. 2904-05]. The court gave several reasons for this, including that any argument about compliance with Rule 3020(e) was not an argument for Branham to make since it was not a creditor of Newland's at the time of confirmation and distribution. [*Id.* at 2905]. In conclusion, the court wrote that the Plan's provisions "are binding on Newland, and, as Newland's judgment creditor, Branham." [Filing No. 18-4, Branham App. 2908].

Meanwhile, on September 12, 2014, Branham had filed its Protective Action to Renew and Refresh the Confirmation Order And Stay Thereof Under Bankruptcy Rule 3020(e) (a complaint) in Adversary Proceeding No. 14-50168 (AP-168), seeking to renew and refresh the Confirmation Order and enforcement of the Bankruptcy Rule 3020(e) injunction. [Filing No. 9-1, Branham App. 14-16; Filing No. 23-1, Branham App. 5493-95]. The bankruptcy court directed the parties to brief the issue of Branham's

standing to seek renewal. The parties did so, and BCU filed a motion to dismiss the complaint for failure to state a claim based, in part, on Branham's lack of standing.

On April 1, 2015, in granting the motion to dismiss, the bankruptcy court explained that bankruptcy standing is "more exacting" than Article III standing as it requires a party "to have a pecuniary interest in the outcome of the bankruptcy proceeding." [Filing No. 9-1, Branham App. 4]. In addition, a party must be "directly and adversely affected pecuniarily by a bankruptcy court order." [*Id.*] The court decided that Branham was "not entitled to make an issue of any of the Confirmation Order's provisions" because Branham was not "among the group of entities for which the protections of § 1141 were intended" such as creditors, equity security holders, etc. [Filing No. 9-1, Branham App. 5-6]. The court also found that, as of confirmation of the plan, Branham "had no legally protected interest that it could assert directly against BCU, as proven by the disallowance of its claims and subsequent affirmance by the Seventh Circuit[.]" [*Id.* at 5]. The bankruptcy court further determined that the Confirmation Order "did not *adversely and directly* affect any pecuniary interest of Branham's." [*Id.*]. Therefore, the court concluded that even taking every factual allegation in Branham's complaint as true, "there is no legal theory upon which Branham may recover and 'renew' the Confirmation Order." [Filing No. 9-1, Branham App. 6]. The court granted BCU's motion to dismiss for failure to state a claim and dismissed Branham's complaint in AP-168.

On May 8, 2015, after hearing oral argument on the cross-motions for summary judgment, the bankruptcy court issued its Findings of Fact and Conclusions of Law on

Cross Motions for Partial Summary Judgment in AP-128. [Filing No. 18-6, Branham App. 3518-48].[6] Both parties had moved for summary judgment on Count I of BCU's complaint—seeking an interpretation of court orders and a declaratory judgment based on that interpretation. Although BCU did not expressly seek summary judgment on Count II for sanctions, its prayer for relief asked for a finding that Branham willfully and intentionally violated the bankruptcy court's orders. Based on that, the bankruptcy court understood BCU as seeking partial summary judgment on Count II as to sanctions liability. [Filing No. 18-6, Branham App. 3525].

The bankruptcy court again ruled it "had exclusive jurisdiction over BCU's assets, sale proceeds and distributions made under the confirmed plan." [*Id.* at 3529]. It determined that the sale order of March 25, 2004, the Confirmation Order, the order disallowing Branham's claims, and the order on BCU's amended application to allow Newland's claim in the amount of approximately $4.1 million were final and non-appealable orders. [Filing No. 18-6, Branham App. 3529-33, 3544]. The bankruptcy court declared that "[a]ll of BCU's pre-petition property was dealt with under the plan and there were no additional pre-confirmation BCU assets to pursue or distribute as of the date of distribution to Newland," [*id.* at 3544], and reiterated that "[a]ll distributions under the plan were authorized." [*Id.* at 3535].

Furthermore, the court declared that "Branham was not and is not a creditor of BCU," Section 6.1 of the Plan did not require BCU to obtain a separate order directing

---

[6] Nunc Pro Tunc findings and conclusions were entered June 25, 2015. [*Id.* at 3556-87].

payment to Newland, and the distribution to Newland shortly after confirmation of the plan was not a basis on which to hold BCU and Newland in contempt.  [Filing No. 18-6, Branham App. 3545].  The court determined that Newland had waived any argument with respect to Rule 3020(e) and, if Newland could not raise Rule 3020(e), then Branham as Newland's judgment creditor, could not raise it either.  [*Id.*]  The court declared that the distributions made to Newland under the plan "were in full and final satisfaction, settlement and release and discharge as against BCU of any and all claims or interests in BCU; Newland expressly waived any pre confirmation claims against BCU and is permanently enjoined under Section 11.2 of the plan from asserting those claims;" "[t]he provisions of the confirmed plan were *res judicata* as to all issues which were decided and which could have been decided before the Confirmation Date, including whether BCU held causes of action against Newland or other persons or entities."  [Filing No. 18-6, Branham App. 3546].  Also, the court decided that Branham had knowledge of the factual allegations underpinning its claims and the claims BCU might have had against Newland or other persons as of the Confirmation Date…."  [Filing No. 18-6, Branham App. 3546].

Moreover, the bankruptcy court ruled that after BCU sold its assets to Whitestown on July 20, 2004, the IURC no longer had jurisdiction over BCU regarding issues related to management, capital structure or operation of the utility.  [Filing No. 18-6, Branham App. 3532, 3536, 3546].  In addition, the court determined that the IURC interim orders were no longer viable because BCU was no longer operating a utility after July 20, 2004, and the IURC's "stand down" order stayed all proceedings involving BCU that were

before the IURC. [*Id.* at 3536, 3546]. The bankruptcy court stated the Plan expressly preempted any otherwise applicable nonbankruptcy law that interfered with the Plan's implementation, such as Indiana law governing limited liability companies. [Filing No. 18-6, Branham App. 3537]. The court stated that the allegations in the 001 and 517 cases "directly implicated the very essence of the confirmed plan-distribution[s] ...." [*Id.* at 3547]. The court found that Branham's "unreasonable and vexatious" conduct in both state court cases and in the bankruptcy court had been an abuse of the bankruptcy process and set a hearing on sanctions. [*Id.* at 3544].

On August 14, 2015, after holding an evidentiary hearing, the bankruptcy court issued its Order on Sanctions in AP-128. [Filing No. 18-6, Branham App. 3640-48]. The court began by stating that "Branham has repeatedly attempted to circumvent the orders of this Court, including the confirmation order, to obtain access to funds distributed many years earlier." [Filing No. 18-6, Branham App. 3641]. Although the bankruptcy court found the Plan to be "explicit" regarding preemption of the IURC orders, and despite Branham's participation in the bankruptcy and the IURC's "stand down" order, the court concluded that "Branham has repeatedly pressed [a] baseless position [that the Plan did not preempt enforcement of the IURC's interim orders] in both state and bankruptcy court." [*Id.*]. The bankruptcy court found it "difficult to draw any conclusion other than Branham's repetitive attempts to argue baseless claims are the result of bad faith." [*Id.* at 3642].

The bankruptcy court found that Branham failed to disclose certain facts to the state court in the 001 Case, for example, the IURC had issued a "stand down" order. The

court also found that Branham misrepresented the record in the 517 Case, for example, by omitting mention of the IURC's "stand down" order and the disallowance of Branham's claims in the bankruptcy case. [*Id.* at 3642-43]. Branham, the court concluded, "crossed the line from exploring novel theories to harassment of BCU and manipulation of these proceedings to badger BCU." [*Id.* at 3645]. Upon finding the evidence insufficient to show Branham disregarded the corporate form, the court declined BCU's request to hold Branham's sole shareholder, officer, and director George Pendygraft personally liable for sanctions. [*Id.* at 3646-48]. The court found a sanction of $38,924 appropriate and ordered Branham to pay that sum to BCU's counsel. [*Id.* at 3648].

These appeals of AP-168 and AP-128 followed and have been consolidated for a decision by this court.

## II.   ISSUES PRESENTED

1.  Whether the bankruptcy court had subject-matter jurisdiction to reopen BCU's bankruptcy case and adjudicate the amended complaint in AP-128?

2.  Whether the bankruptcy court erred in converting BCU's motion to dismiss Branham's counterclaim in AP-128 to a motion for summary judgment and in granting summary judgment?

3.  Whether the bankruptcy court erred in construing the Plan, Confirmation Order, and other bankruptcy orders and in determining that:

    (a) all of BCU's pre-petition property was dealt with under the Plan, and that as of the dates of distribution to Newland, BCU had no other pre-confirmation assets available for attachment or garnishment;

(b) BCU's distributions made to Newland under the Plan were not unauthorized;

(c) the distributions made to Newland were in full and final satisfaction, settlement, release, and discharge as against BCU of any and all claims or interest in BCU, Newland expressly waived any pre-confirmation claims against BCU, and Newland and Branham are permanently enjoined from asserting them; and

(d) the provisions of the Plan were res judicata as to all issues which were decided and which could have been decided before the Confirmation Date, including whether BCU held any causes of action against Newland or others?

4. Whether the bankruptcy court erred in denying Branham's discovery motions?

5. Whether the bankruptcy court erred in dismissing Branham's complaint in AP-168 under Federal Rule of Civil Procedure 12(b)(6) for lack of standing?

6. Whether the bankruptcy court erred in imposing sanctions against Branham?

7. Whether this appeal is frivolous, abusive and vexatious, and justifies an award of fees and costs against Branham and its counsel?

## III. STANDARDS OF REVIEW

The district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" in cases and proceedings in the bankruptcy court. 28 U.S.C. § 158(a). On appeal, this court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017). A factual finding is clearly erroneous if "there is evidence to support it, [but] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010)). The district court reviews decisions involving mixed questions of fact and law de novo. *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 647 (7th Cir. 2008).

The decision to reopen a bankruptcy case is within the bankruptcy court's broad discretion. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010). Discovery matters such as BCU's motion to quash and for protective order are committed to the bankruptcy court's discretion as well. *See In re DFI Proceeds, Inc.*, 441 B.R. 914, 916 (Bankr. N.D. Ind. 2011). This court reviews the bankruptcy court's imposition of sanctions for an abuse of discretion. *In re Hancock*, 192 F.3d 1083, 1085 (7th Cir. 1999). "Such abuse occurs only when a court has acted contrary to the law or reached an unreasonable result." *In re Sokolik*, 635 F.3d 261, 269 (7th Cir. 2011).

## IV. DISCUSSION

### A. AP-128

#### 1. Reopening the Bankruptcy Case

The bankruptcy court may reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b); *see also In re UAL Corp.*, 809 F.3d 361, 354 (7th Cir. 2015).  The bankruptcy court may also reopen a case to interpret and enforce the plan and confirmation order as well as other judgments and orders.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (stating, where bankruptcy court orders were entered more than two decades earlier, that the "Bankruptcy Court plainly had [subject-matter] jurisdiction to interpret and enforce its own prior orders"); *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 771 (7th Cir. 2011) ("a bankruptcy court has jurisdiction over challenges to its orders whatever their basis"); *Redmond*, 624 F.3d at 798 (noting the bankruptcy court may reopen a case to enforce plan language and discharge).

Branham cites *SG & Co. Ne., LLC v. Good*, 461 B.R. 532, 537 (Bkrtcy. N.D. Ill. 2011), in arguing the bankruptcy court lacked subject-matter jurisdiction, but the case is inapposite.  The plaintiffs' claims there did not arise under the Bankruptcy Code, did not arise in a case under the Bankruptcy Code, and were not related to a case under the Code.  Here, in contrast, BCU's claims arise in a case under the Bankruptcy Code and are very much related to a case under the Code.  More specifically, BCU's amended complaint in AP-128 seeks an interpretation and enforcement of the Plan, the Confirmation Order, and other bankruptcy court orders.

A bankruptcy court's interpretation of its own order is "entitled to substantial deference," *Travelers Indem. Co.*, 557 U.S. at 150 n.4, because that court "is in the best position" to give the order its intended meaning and is familiar with the underlying

bankruptcy case. *Matter of Weber*, 25 F.3d 413, 416 (7th Cir. 1994); *Goodall v.*

*Chrysler, Inc.*, No. 3:16-cv-03228, 2017 WL 4076093, at *10 (C.D. Ill. Sept. 14, 2017).

The Confirmation Order in BCU's bankruptcy case specifically retained jurisdiction over

the case "for the purposes set forth in the Plan." [Filing No. 9-1, Branham App. 20]. The

purposes of the Plan were to sell BCU's assets and to make distributions of the sale

proceeds to satisfy claims. To put it differently, distribution of the sale proceeds was

necessary to achieve the purposes set forth in the Plan. [*See* Filing No. 18-4, Branham

App. 2908].

Yet, Branham argues the bankruptcy court's jurisdiction ceased upon

consummation of the Plan, or at least no later than the bankruptcy case's closure.[7]

Language at the beginning of Article X of the Plan states the "Bankruptcy Court will

retain jurisdiction *until Consummation of the Plan.*" [Filing No. 9-5, Branham App. 630

(emphasis added)]. While this language may suggest a temporal limitation on the

bankruptcy court's jurisdiction when read independently, bankruptcy plans are treated as

contracts and interpreted under state contract principles. *See In re Harvey*, 213 F.3d 318,

320 (7th Cir. 2000). Here, the Plan provides that Indiana state law will apply. [Filing

No. 9-5, Branham App. 635 ("Except to the extent the Bankruptcy Code, Bankruptcy

Rules or other federal law are applicable …, the rights and objections arising under this

Plan shall be governed by, and construed and enforced in accordance with, the laws of

---

[7] This is inconsistent with Branham's judicial admissions in its answer and counterclaim that the bankruptcy court had jurisdiction to interpret and enforce its orders. It also is inconsistent with Branham's stipulation at the August 2012 hearing.

the State of Indiana")].  Therefore, the Plan must be interpreted under Indiana contract law.

Under Indiana contract principles, the Plan's terms must be read together and construed as a whole.  *See, e.g., Erie Indem. Co. v. Estate of Harris*, 80 N.E.2d 923, 928 (Ind. Ct. App. 2017).  Thus, the language Branham highlights must be read together with the rest of Article X and the Plan and interpreted so as to give full effect to all of the Plan's terms.  For example, the Plan provides that the bankruptcy court will retain jurisdiction to "reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan" and "enforce and interpret or construe the terms and conditions of this Plan."  [Filing No. 9-5, Branham App. 630-31].  The Plan must also be read together and interpreted with the Confirmation Order. *See In re Gainey Corp.*, 447 B.R. 807, 819 (Bankr. W.D. Mich. 2011) ("When there exist multiple documents or writings tied together, all writings must be considered and interpreted as a single package."), *aff'd*, 481 B.R. 264 (6th Cir. 2012).  The Confirmation Order provides: "The Court shall retain jurisdiction over this Chapter 11 case for the purposes set forth in the Plan."  [Filing No. 9-1, Branham App. 20].  When the Plan and Confirmation Order are read together, it becomes clear the bankruptcy court retained jurisdiction to enforce and construe the terms of the Plan.

None of the authorities cited by Branham establish the bankruptcy court lacked subject-matter jurisdiction to re-open the bankruptcy case.  *See, e.g.*, *Ernst & Young LLP v. Baker O'Neal Holdings, Inc. (in re Baker O'Neal)*, 304 F.3d 753, 755 (7th Cir. 2002) (holding language in confirmed plan providing for bankruptcy court's retention of

jurisdiction precluded adversary party from seeking enforcement of contractual arbitration clause); *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (holding bankruptcy court lacked jurisdiction to resolve statute of limitations defenses in state court tort cases).

Further, Branham contends that BCU lacked standing to reopen the bankruptcy because it had no assets and the bankruptcy court lacked subject-matter jurisdiction because Branham was not a creditor of BCU. [Filing No. 17 at 25-26]. Both contentions are incorrect. As the bankruptcy court decided, the challenge to BCU's standing is disingenuous. Federal Rule of Bankruptcy Procedure 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to 350(b) of the Code." Fed. R. Bankr. P. 5010; *see also* 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."); *Stachewicz v. Wells Fargo Home Mortg.*, No. 12-cv-1459, 2013 WL 501778, at *4 n.3 (C.D. Ill. Jan. 15, 2013) ("Any party in interest, such as the debtor or any other creditor, may move to reopen a bankruptcy ...."), *report and recommendation adopted*, 2013 WL 489648 (C.D. Ill. Feb. 8, 2013); *In re Trahan*, 460 B.R. 207, 209 (Bankr. C.D. Ill. 2011) (reopening may be at the request of the debtor or other "party in interest").

Moreover, Branham's state court litigation and efforts in federal court seek to invalidate BCU's distributions to Newland under the Plan. Thus, Branham seeks to jeopardize the new contract between BCU and its creditors that was created by the Plan. BCU has standing to seek enforcement of that contract. Branham cites no authority to

establish that its status as a third-party, non-creditor deprives the bankruptcy court of jurisdiction. Besides, Branham filed proofs of claims in the bankruptcy court, injecting itself into the original bankruptcy case and submitting itself to the bankruptcy court's jurisdiction. It also filed AP-168, again submitting itself to the bankruptcy court's jurisdiction.

Branham raises for the first time in this appeal of the bankruptcy court's orders the *Rooker-Feldman* doctrine, arguing that the IURC's utility permits were "functionally" state court judgments" and "the equivalent of final state court judgments". [Filing No. 17 at 24, 28-29]. It also argues the orders in the 001 and 517 Cases were like final judgments. [Filing No. 17 at 28-29]. The *Rooker-Feldman* doctrine deprives a court of subject-matter jurisdiction and it cannot be waived. *See, e.g., Garry v. Geils*, 82 F.3d 1362, 1364 (7th Cir. 1996). Under *Rooker-Feldman*, "the lower courts lack jurisdiction to review the decisions of state courts in civil cases." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010). However, the *Rooker-Feldman* doctrine does not preclude federal "judicial review of executive action, including decisions made by state administrative agencies." *Id.* As for the state court cases, BCU was not named as a party in the 001 Case, and the case was dismissed as barred by the statute of limitations (as Branham acknowledges [Filing No. 17 at 31]), see *Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979, 991 (Ind. Ct. App. 2014). In addition, the garnishment order in the 517 Case was withdrawn, and Branham has not identified a "final judgment" in that case. (Instead, it cites its Verified Motion for Proceedings Supplemental to Execution and

Garnishment. [Filing No. 17 at 30 (citing Branham App. 842 (see Filing No. 9-6)].

There is no *Rooker-Feldman* problem here.

Thus, the court concludes the bankruptcy court had subject-matter jurisdiction to reopen BCU's bankruptcy case and adjudicate BCU's amended complaint.

## 2. Converting the Motion to Dismiss to a Motion for Summary Judgment and Granting Summary Judgments

Branham contends the bankruptcy court erred in *sua sponte* converting BCU's motion to dismiss Branham's counterclaim in AP-128 into a motion for summary judgment. [Filing No. 17 at 39-40]. Relatedly, it argues another procedural error: genuine issues of material fact prevented the entry of summary judgment. [*Id.* at 42].

Branham argues the conversion was in contravention of Fed. R. Civ. P. 12(d) and Federal Rule of Bankruptcy Procedure 7012(d). Under Rule 12(d), made applicable to the bankruptcy court by Rule 7012(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "However, 'the failure to afford such procedure will not necessarily mandate reversal unless the record discloses the existence of unresolved material fact issues, or the parties represent that they would have submitted specific controverted material factual issues to the trial court if they had been given the opportunity.'" *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015) (quoting *Woods v. City of Chicago,* 234 F.3d 979, 991 (7th Cir. 2000) (internal quotation and citation omitted)).

While the bankruptcy court did not give notice to Branham before converting the motion to a motion for summary judgment, Branham had a meaningful opportunity to address issues and present material pertinent to the motion.  Even if Branham was not afforded such an opportunity, reversal is not required.  Branham argues the bankruptcy court determined the Plan was ambiguous such that extrinsic evidence was needed to assess the meaning of the contract (the Plan).  But the court found ambiguity in limited respects—as to whether BCU's assets were retained or re-vested in Newland on confirmation, and whether BCU reserved the right to enforce, waive or assign any claims or causes of action.  [Filing No. 18-3, Branham App. 2376-77].  Branham maintains the bankruptcy court used extrinsic evidence, namely the Disclosure Statement, to interpret the Plan.  [Filing No. 17 p. 40 (citing Branham App. 2375)].  Although the court did reference the Disclosure Statement for its conclusion that "[a]ll of Debtor's scheduled 'Property was dealt with by the Plan," [Filing No. 18-3, Branham App. 2375], it also cited the Plan itself for that same conclusion.  [*Id.*]  The bankruptcy court's citation to the Disclosure Statement does not establish the existence of genuine issues of material fact which would preclude the grant of summary judgment.

Moreover, Branham has wholly failed to identify any specific controverted material *factual* issues it would have presented bearing on the motions for summary judgment.  [*See* Filing No. 17 at 42-44].[8]  Its "genuine issues" concern the bankruptcy

---

[8] Branham suggests five issues of material fact, including whether the $2.5 million distribution to Newland was made before the Plan's Effective Date and expiration of the stay under Rule 3020(e). There is no dispute that such distribution did occur before both dates. However, it does not follow that BCU has a right to recover the $2.5 million distribution.

court's construction of the Plan and other orders—legal conclusions. Therefore, the bankruptcy court did not err in entering partial summary judgments and dismissing the counterclaim. Branham also complains generally that the bankruptcy court may have overlooked shortcomings in BCU's summary judgment filings, for example, its designation of undisputed issues of material fact. However, the decision whether to strictly enforce a procedural rule or to overlook any transgression is within the court's discretion. *See, e.g.*, *Little v. Cox's Supermarkets*, 71 F.3d 637,641 (7th Cir. 1995). No abuse of discretion has been shown here.

### 3. The Interpretation of the Plan and Bankruptcy Court Orders

Branham first challenges the bankruptcy court's ruling that bankruptcy law preempted Indiana law. Branham appears to suggest that Indiana law could not be preempted because state laws in existence at the time the Plan was confirmed were made part of the Confirmed Plan (a contract), and "as part of *Confirmed Plan*, they were applicable *Bankruptcy Law*." [Filing No. 17 at 20-21]. This is incorrect. Bankruptcy law is federal law and therefore preempts state law wherever the two conflict. *See, e.g.*, *In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) ("[T]he bankruptcy statutes have significant preemptive force."); *Hammes v. Brumley,* 659 N.E.2d 1021, 1027 (Ind. 1995) ("Because bankruptcy law is federal law, enacted pursuant to the constitutional grant of bankruptcy power, it preempts state law ... pursuant to the supremacy clause....").

Branham continues to press its argument that causes of action remained assets of BCU and were not distributed to Newland because they were subject to the Indiana

Statute of Frauds and thus void unless assigned in writing. [Filing No. 17 at 32]. It asserts "the Statute of Frauds … does not inhibit implementation but only prescribes a process to accomplish it." [*Id.*]. But implementation of a plan requires a process, which is defined as "a series of actions or events performed to make something or achieve a particular result." https://www.dictionary.cambridge.org/dictionary/ english/process (last visited 01/18/2018). Implementation of a plan and the process to accomplish the plan are essentially the same thing. As the bankruptcy court explained: "The only way the plan could be implemented was by distribution of the proceeds from the sale." [Filing No. 18-6, Branham App. 3537]. Subjecting the distributions to state law such as the Statute of Frauds and IURC orders would interfere with and impede implementation of the Plan. Branham's argument that bankruptcy law did not preempt Indiana law, particularly the Statute of Frauds, is incorrect.

Ironically, Branham contests the bankruptcy court's determination that Branham's efforts to collect its judgment against Newland "challenged the distributions made under the confirmed plan and amount to asking for a 'do over' of the confirmed plan." [Filing No. 18-6, Branham App. 3519; *see also* Filing No. 17 at 21]. Branham maintains it "never challenged" the validity of the Confirmed Plan, but rather, merely sought an interpretation of the Confirmed Plan "that considered applicable Indiana contract law, an interpretation that supported *Estate Assets* re-vested in [BCU], not *Newland*" and that ruled the $2.5 million distribution to Newland was not validly made under the Confirmed Plan. [Filing No. 17 at 21-22]. But by seeking such an "interpretation," Branham *is* challenging the validity of the Confirmed Plan and the distributions that were made to

Newland under the Confirmation Order. Branham's premise is that the distribution to Newland was inappropriate and the transfer void, thus giving rise to a right in BCU to the distributed property/sale proceeds. Branham has no claim unless it challenges the distributions to Newland under the Confirmation Order and Plan.

Next, Branham challenges the bankruptcy court's orders for failure to enforce Section 1.15 of the Plan, which defines "Effective Date"[9]; Federal Rule of Bankruptcy Procedure 3020(e), which states that an order confirming a Chapter 11 plan is stayed until expiration of 10 days unless the court orders otherwise;[10] and principles of *in gremio legis* (in the bosom of the law) regarding the distributions to Newland. [Filing No. 17 at 32-34].[11] Branham asserts the alleged violation of Rule 3020(e) was civil contempt. [*Id.* at 33]. The only case it cites for support, however, neither holds nor implies any such thing. *See In re MMP 10180, LLC*, Bankr. No. 4:10-bk-38675-JMM, 2012 WL 426708, at *3-4 (Bankr. D. Ariz. Feb. 9, 2012) (deciding whether payments were timely in light of Rule 3020(e)'s stay). In addition, Branham offers no authority for the proposition that it had standing to pursue civil contempt for BCU's alleged violation of Rule 3020(e). And practically speaking, Branham has not shown that the distribution to Newland left Branham unable to recover. As the bankruptcy court found, at the time of the

---

[9] "Effective Date" is defined as "the first business day following the day on which the Confirmation Order becomes a Final Order, without any party in interest having appealed from same." [Filing No. 9-5, Branham App. 616].

[10] This was the number of days in the version of the rule in effect when the Plan was confirmed.

[11] Branham refers to "BCU's invalid payments to Newland," [Filing No. 17 at 32], which confirms it is, in fact, challenging the distributions made under the Confirmation Order.

distributions, Newland had more than enough funds to satisfy Branham's contract claim. [*See* Filing No. 18-4, Branham App. 2905].

Furthermore, Branham is not a creditor of BCU and was not a judgment creditor of Newland when the Plan was confirmed; Branham has no right to be heard on premature distributions. *See, e.g.*, 11 U.S.C. § 1109(b) ("A party in interest … may raise and may appear and be heard on any issue in a case under this chapter."); Fed. R. Bankr. P. 3020(e), adv. comm. notes, 1999 amend. (noting the purpose of the rule is to allow time for a party to request a stay of the confirmation order pending appeal before the plan is implemented and an appeal becomes moot). And the bankruptcy court had the authority to order that Rule 3020(e) was inapplicable so that the Plan could be implemented and distributions made immediately. Fed. R. Bankr. P. 3020(e), adv. comm. notes, 1999 amend. Branham fails to develop any argument that the funds distributed to Newland were *in gremio legis*, thus waiving the argument. *See, e.g.*, *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014) ("Perfunctory and undeveloped arguments are waived[.]").

Branham complains that BCU "jumped the gun" and made a distribution to Newland before the expiration of the Rule 3020(e) stay, thus rendering the distributions and disbursements to Newland "unlawful" and, as a result, the property purportedly transferred remained property owned by BCU. [Filing No. 8 at 16, 37-38; Filing No. 17 at 32-33]. However, with one exception, Branham cites no legal authority to support its position. The exception is *Lamb v. Cramer*, 285 U.S. 217, 219 (1932), cited for the proposition that a party who directs or receives distribution of property subject to

litigation in a manner contrary to the court's authority is in contempt of court and subject to contempt proceedings to compel restoration of the diverted property to the custody of the court.  [*See* Filing No. 8 at 38 n.24].  But *Lamb* is inapposite and did not involve any effort to void distributions made before expiration of the Rule 3020(e) stay.  And Branham cites no authority for the proposition that the violation of the stay vested BCU with choses in action to pursue claims.  [*See id.* at 38].

Relatedly, Branham argues the bankruptcy court erred in failing to enforce the provision in Section 6.1 of the Plan which provides that the proceeds from the sale of property to Whitestown were to be held by BCU until the court approved and ordered payment of all creditor claims.  [Filing No. 17 at 34].[12]  Branham does not offer any reasoning or cite any authority to challenge the bankruptcy court's determination that Section 6.1 did not require BCU to obtain a separate order directing payment to Newland on account of its equity interest.  As the bankruptcy court concluded, Section 6.1 refers to payment of claims and administrative expense claims; it does not refer to payment on account of an equity interest such as Newland's.  [Filing No. 9-5, Branham App. 626].  Thus, the Plan did not require a separate court order directing payment to Newland. Branham has not shown error here.

---

[12] Branham suggests the bankruptcy court misunderstood its argument that the distributions to Newland did not comply with Section 6.1 because they were made before the court approved the claims and ordered payment.  [Filing No. 17 at 22-23].  The bankruptcy court understood Branham as arguing that the payments to Newland "were not authorized."  [Filing No. 18-3, Branham App. 2380].  Branham is quibbling over semantics.  Whether its argument is that the distributions did not comply with the Section 6.1 or that the distributions were unauthorized, the essence is that the distributions were invalid and void.

Branham argues that the bankruptcy court impermissibly modified the Plan by allowing partial payments of BCU's assets to Newland and allowing distribution to Newland before all allowed claims were made. [Filing No. 17 at 23]. But the court was not modifying the Plan; it was interpreting the Plan and evaluating the consequences of minor failures in compliance—after distributing the $2.5 million to Newland, BCU still had sufficient funds to pay other unpaid claims, including Branham's claims under the contract with Newland. Besides, Branham has not shown that it has standing to object to partial payments or to distribution to Newland before other claims were paid.

The bankruptcy court did not err in concluding that the distributions by BCU to Newland were not unauthorized.

Branham argues the bankruptcy court erred in finding that the Plan did not sufficiently reserve BCU's choses of action against Newland, its members and principals. [Filing No. 17 at 34-35]. Branham first challenges the bankruptcy court's authority to rule on affirmative defenses such as estoppel to claims "outside its jurisdiction," presumably referring to state law claims against Newland for fraudulent transfer, conversion and the like. [*Id.* at 35]. The case it cites in asserting a lack of jurisdiction is not on point. *See Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991) (holding bankruptcy court lacked jurisdiction to decide affirmative defenses in tort cases pending in other jurisdictions against debtor after confirmation of plan). In asserting that the Plan adequately reserved BCU's choses of action, Branham cites *In re P.A. Bergner*, 140 F.3d 1111 (7th Cir. 1998). This case does not help Branham either. The plan there waived any cause of action or rights to payment of claims but expressly reserved "any … such

[causes of] actions that may be pending on [the approval] date," *id.* at 1117, and the action at issue was pending as of the date of approval. The Plan at issue here does not contain similar language. Besides, no action by BCU against Newland, its members, or its principals was pending on the date of confirmation.

Branham maintains that the Plan did not provide Newland, its members and/or its principals a waiver, release, or other relief from BCU's choses in action against them. [Filing No. 17 at 35]. According to Branham, any ambiguity in the reservation language of Section 9.3 must be read against BCU's interests and those of Newland, its members, and its principals. [*Id.*]. The language is not ambiguous; rather, as the bankruptcy court correctly decided, the general reservation is not sufficiently specific to reserve a claim. Though "[r]es judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding … a general reservation of rights does not suffice to avoid res judicata." *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) (*citing D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir. 1997) (debtor's reservations of rights lacked required specificity to reserve a cause of action)).

In addition, Branham cites *In re Kmart Corp.*, 310 B.R. 107 (Bankr. N.D. Ill. 2004), in support of its argument that BCU reserved claims. But the case actually supports the bankruptcy court's conclusion that a blanket or general provision is insufficient to defeat the preclusive effect of a confirmation order; instead, an express reservation is necessary. *Id.* at 125. And it is unclear why Branham cites *Salley v. Schmitz*, No. 94 C 3448, 1996 WL 665673, at *2-3 (N.D. Ill. Nov. 6, 1996), for principles of judicial estoppel. BCU is not attempting to reverse an earlier litigation position.

Regardless, BCU did not retain any choses in action against Newland, its members and/or its principals.[13] The bankruptcy court did not err in finding that all of BCU's property, including any choses of action, was dealt with by the Plan. Even if BCU reserved any choses of action under the Plan, the Confirmation Order is res judicata as to all issues that could have been decided before confirmation, and this includes any choses in action BCU had against Newland, its members, and/or principals. *See, e.g.*, *Matter of Greenig*, 152 F.3d 631, 635 (7th Cir. 1998) (stating "the confirmation of a reorganization plan is no less than an order of the bankruptcy court, with res judicata effect") (citations omitted). And, as the bankruptcy court correctly determined, both Newland and Branham are enjoined from asserting any claims accruing on or before the Confirmation Date under Section 11.2 of the Plan.

Branham contends the Bankruptcy Code prohibited BCU from obtaining a discharge. The bankruptcy court addressed this argument and read the modifying language in 11 U.S.C. § 1141(d)(1)—"[e]xcept as otherwise provided … in the plan"—as applicable to § 1141(d)(3), which sets forth three instances in which the debtor does not get a discharge. Section 1141(d)(3)(A) provides: "The confirmation of a plan does not discharge a debtor if the plan provides for the liquidation of … the property of the estate." 11 U.S.C. § 1141(d)(3)(A). Because the Plan provided for the liquidation of BCU's estate, BCU was not statutorily entitled to a discharge. However, even though BCU was not entitled to a discharge, the Plan could provide for a discharge, and here the

---

[13] Further discussion on this matter is provided in the section addressing the appeal of AP-168.

Plan did.  [Filing No. 18-6, Branham App. 3541].  Branham cites no authority to show that the bankruptcy court's interpretation was erroneous.  But even if it were incorrect, the bankruptcy court reasoned that the Plan provisions prevail if they are inconsistent with the Bankruptcy Code.  [*Id.*]  Branham does not show any error with this conclusion either.

Instead, it submits that any discharge provided in the Plan applied to parties to the Plan only and not to third-party, non-creditors such as itself.  Newland was a party to the Plan and the discharge applies to Newland.  And Section 11.2 of the Plan, which enforces the discharge, permanently enjoins "[a]ll holders of Claims and Equity Interests, and their successors and *assigns*," that is, Branham as Newland's judgment creditor, "from asserting against [BCU], or any of [BCU's] Property, any Claims or interests based upon any act or omission, transaction or other activity … that occurred prior to the Confirmation Date."  [Filing No. 9-5, Branham App. 632 (emphasis added)].

Next, Branham makes a confusing argument that the bankruptcy court erred in failing to interpret Section 11.1 of the Plan as follows:

> providing *Newland's* equity interest in *BCU-DIP* continued in *Post-Confirmation-BCU* unchanged except for complete resolution and discharge as against *Post-Confirmation-BCU* of any and all equity interest of *Newland* in *BCU-DIP* that accrued <u>before</u> *Plan Confirmation*[.]

[Filing No. 17 at 36 (all emphases Branham's)].  Branham asserts that under Section 11.1 of the Plan, estate assets re-vested in "*Post-Confirmation BCU* and *Newland* held 100% of *Post-Confirmation-BCU*'s equity interest."  [*Id.* (emphases Branham's)].  Thus, according to Branham, Newland still has an equity interest in BCU.  Yet, Branham makes

no effort to explain how this could be so, especially in contravention of the plain, clear language of the Plan that the distributions satisfied, settled, released, and discharged as against BCU any and all claims against and equity interests in BCU. [*See* Filing No. 9-5, Branham App. 632 (Plan, Article XI, § 11.1]. And Branham cites no authority to support its position on this issue.

The bankruptcy court erred, Branham argues, in failing to identify BCU's assets, and estate assets, in finding that "*Post-Confirmation-BCU* had no assets," and in giving opinions on the merits of affirmative defenses to "*Post-Confirmation-BCU's* choses in action." [Filing No. 17 at 37]. Branham is attempting to pursue BCU's pre-confirmation assets. Importantly, Branham's case is premised on proving that the distributions to Newland were inappropriate, rendering the transfers void, and giving BCU a right to the sales proceeds that were distributed. But the bankruptcy court did not err in concluding that the distributions by BCU to Newland were not unauthorized.

Branham contends the bankruptcy court erred in failing to consider Branham's equitable liens on Newland's equity/economic interest in "Post-Confirmation BCU." [Filing No. 17, p. 38]. To the extent Branham has any equitable liens on BCU's assets acquired post-confirmation, the bankruptcy court explained that it was not addressing such issues. [Filing No. 18-6, Branham App. 3547-48]. Branham asserts that it is entitled to any future income, profits, or other property that Newland might receive from BCU [Filing No. 17, p. 39]. But if such income, profits, or other property were to exist, Branham's right, if any, to them is for another day. Branham has not shown that the bankruptcy court erred in declining to address BCU's post-confirmation assets, if any.

What's more, as Chief Judge Moberly correctly recognized, "a charging order is the only remedy for a judgment creditor against a member's interest in an LLC." *Brant v. Krilich*, 835 N.E.2d 582, 592 (Ind. Ct. App. 2005). Branham has not argued that it ever obtained a charging order.

Finally, Branham resurrects its arguments that the distributions to Newland were invalid because of the IURC orders, which it maintains remained valid and had preclusive effect on the bankruptcy proceeding. [Filing No. 17 at 23-24]. But, as the bankruptcy court correctly decided, this assertion is baseless.

The court concludes that Branham has not established the bankruptcy court made any error of fact or law in construing the Plan, the Confirmation Order, or any other order of the bankruptcy court.

### 4. Branham's Discovery Motions

The next issue is whether the bankruptcy court erred in granting BCU's motion to quash subpoena and motion for protective order to the extent they pertain to pre-confirmation matters or to BCU's corporate governance. Branham argues that discovery is broad; a party may discover any matter, not privileged that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). But Branham has not articulated any specific facts it needed to discover relevant to any claim or defense. Simply being a judgment creditor of Newland is not enough to open wide the gates of discovery. Branham has not shown that the bankruptcy court abused its discretion in the granting BCU's discovery motions.

**B. AP-168**

**1. The Bankruptcy Court's Jurisdiction to Enter Final Orders and Judgments**

For the first time on appeal, Branham argues the bankruptcy court lacked authority to enter final orders and judgments in AP-168 because its complaint was not a core proceeding. [Filing No. 8 at 17]. However, its argument is neither developed nor supported by citation to pertinent legal authority, so it is therefore waived. *See, e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived …." ) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Further, the relief that Branham sought in the Adversary Proceeding—to renew and refresh the Confirmation Order—directly involves issues considered core proceedings. *See, e.g.*, *In re Turner*, 558 B.R. 269, 271 (Bankr. N.D. Ill. 2016) (bankruptcy court had authority to reopen case to enforce the terms of a confirmed plan and confirmation order as a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (L) and (O), among others).

What's more, as even Branham acknowledges, the bankruptcy court could enter orders and judgments in a non-core proceeding with the consent of all parties. *Wellness Int'l Network, Ltd. v. Sharif*, —— U.S. ——, 135 S. Ct. 1932, 1942 (2015) ("Our precedents make clear that litigants may validly consent to adjudication by bankruptcy courts."). Such consent need not be express; implied consent will do. *Id.* at 1947-48. By initiating the Adversary Proceeding, Branham effectively consented to the bankruptcy court's authority to enter orders and judgments, and no other party has challenged that

authority.  Branham has no basis on which to insist that the issues raised in AP-168 be resolved by an Article III judge.

### 2. Branham's Lack of Standing

Branham challenges the bankruptcy court's dismissal of its AP-168 complaint for lack of standing on several grounds.  It first argues that a motion to dismiss for lack of standing must be brought under Fed. R. Civ. P. 12(b)(1).  Branham confuses Article III standing, which is jurisdictional, with prudential and bankruptcy standing, which are not. *See In re Ray*, 597 F.3d 871, 874 (7th Cir. 2010) ("Bankruptcy standing is narrower than Article III standing."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (objections to prudential standing can be waived).  The bankruptcy court did not decide that Branham lacked Article III standing, but rather that Branham lacked bankruptcy standing.  *See In re Stinnett*, 465 F.3d 309, 315 (7th Cir. 2006) ("To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings.  Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order.") (quotation omitted).

According to Branham, evidence in the reopened bankruptcy, specifically AP-128, demonstrates it has standing to renew the Confirmation Order.  Its claim to standing boils down to this: "Branham has standing because indisputably it is a judgment-creditor of Newland based on the *Branham Judgment*.  As such, it has a legal right, and therefore standing, to pursue a proceedings supplemental against Newland's 100% owned [BCU], as garnishee …."  [Filing No. 8 at 17].  Nonetheless, Branham argues that the Confirmation Order "does not bind Branham."  [Filing No. 8 at 23 (quoting 11 U.S.C. §

1141(a) ("the provisions of a confirmed plan bind the debtor ... any creditor, [and] equity security holder")]; *see also id.* at 25 n.12]. Ironically, the bankruptcy court also quoted § 1141(a) as legal authority in support of its determination that Branham lacked standing to renew the Confirmation Order. [Filing No. 9-1, Branham App. 5-6]. The bankruptcy court was right: the Confirmation Order did not adversely and directly affect any pecuniary interest of Branham's. Thus, Branham is not entitled to make any issue of the order's provisions.

Branham complains that the bankruptcy court allowed BCU to enforce the Confirmation Order and other bankruptcy court orders against Branham. [Filing No. 8 at p. 11-12]. It argues that based on the bankruptcy court's findings, namely that Branham was not and is not a creditor of BCU and Branham was not a "party in interest" to the Confirmation Order, "it follows that the 9/14/04 Plan Order is not *res judicata* to Branham ...." [Filing No. 8, p. 10]. Branham claims "there is a *finding dichotomy*" in the reopened BCU bankruptcy, namely, the bankruptcy court's finding in AP-128 that the Confirmation Order "is *res judicata* as to Branham" and the court's finding in AP-168 that the Confirmation Order "does not apply to Branham (not *res judicata*) as Branham lacks standing to seek to extend or renew it." [Filing No. 8 at 12]. Branham maintains the inconsistency between these findings is *prima facie*. Not so.[14]

---

[14] Branham claims the law-of-the-case doctrine provides it with standing [Filing No. 8, pp. 21, 26], but this argument is premised on its "finding dichotomy" argument, which fails. Similarly, even if Branham could properly bring proceedings supplemental against BCU in state court, nothing in Federal Rule of Civil Procedure 69 or Indiana Trial Rule 69(E) provides Branham with standing to assert proceedings supplemental against BCU in the bankruptcy case through its counterclaim.

The bankruptcy court did not find that the Confirmation Order was *res judicata* as to Branham as a party in interest to the Confirmation Order. Instead, it found, "assuming … causes of action were preserved under the Plan and that they revested in [BCU] upon confirmation," the order was *res judicata* "as to all issues which were decided and which could have been decided before confirmation." [Filing No. 18-3, Branham App. 2383; see also Filing No. 18-6, Branham App. 3546]. In arguing the Confirmation Order is not *res judicata* as to it, Branham conveniently ignores the legal path by which it could have a claim against BCU.[15] Branham was not and is not a creditor of BCU. Instead, Branham is a judgment creditor of Newland. As a judgment creditor of Newland, Branham has no greater right to assert a claim against BCU than Newland would have.

A "judgment creditor stands in the shoes of the judgment debtor and, consequently, the claim asserted against the garnishee must be one which the judgment debtor could have maintained and enforced in his own name." *Pak v. Admiral Ins. Co.*, No. 04 C 3553, 2004 WL 2931322, at *5 (N.D. Ill. Dec. 9, 2004). For Branham to have a right to assert a claim against BCU, Newland would first have to hold a right to assert a claim against or interest in BCU. However, as provided in Section 11.1 of the Plan, Newland expressly released and discharged any claims or equity interests it may have had against BCU. [*See* Filing No. 9-5, Branham App. 632 ("The … distributions made

---

[15] Branham asserts there is "further evidence" to support its position that the Order Confirming Plan is not *res judicata* as to Branham and points to its own pursuit of collection of its judgment against Newland in the proceedings supplemental in Boone Circuit Court. But whether Branham *views* the Confirmation Order as *res judicata* as to itself is beside the point—the point is whether or not the order *is res judicata* as to the claims Branham attempts to assert.

pursuant to the Plan shall be in full and final satisfaction, settlement, release and discharge as against the Debtor of any and all Claims against, and Equity Interest in, the Debtor, … including, without limitation, any Claim or Equity Interests accrued on or before the Confirmation Date….")]. And Newland is enjoined under Section 11.2 of the Plan from asserting any such claims against or equity interests in BCU. Consequently, Branham, as Newland's judgment creditor, is likewise enjoined. Moreover, it does not follow from the conclusion that the Confirmation Order is *res judicata* as to all issues that were decided or could have been decided that Branham has standing to seek renewal of the Confirmation Order.

Branham also maintains it has standing in the reopened bankruptcy based on the filing of its AP-128 Counterclaim, seeking to pursue proceedings supplemental against BCU and its motion for sanctions against BCU for violating Federal Rule of Bankruptcy Procedure Rule 3020(e). Its arguments are not persuasive. "[A] party having no direct interest in the bankruptcy estate generally will not qualify as party in interest with standing to participate in matters involving administration of the bankruptcy estate." *In re Pantazelos*, Case No. 15bk08916, 2016 WL 2342905, at *2 (Bankr. N.D. Ill. Apr. 29, 2016); *see also In re Int'l Oriental Rug Ctr., Inc.,* 165 B.R. 436, 440 (Bankr. N.D. Ill. 1994) (non-creditor third-party lacked standing to prosecute motion for sanctions against the debtor). "Status as a defendant in an adversary proceeding does not automatically confer 'party in interest' status … or provide a direct interest in [the] bankruptcy to give standing in th[e] matter." *In re Pantazelos*, 2016 WL 2342905, at *2.

Branham believes that BCU "still holds Newland assets that the [Confirmation Order] declared distributed to Newland, thereby obligating [BCU] to Newland for such distributions." [Filing No. 8 at 29]. The purported assets Branham identifies are "choses in action[16] preserved by [BCU] and revested in [BCU]." [*Id.* at 30]. This includes claims that existed when BCU filed its bankruptcy petition in September 2003 as well as breach of fiduciary duty claims against Newland and its members for operating BCU in violation of the law. [See *id.* at 30-31, 32-35]. Branham asserts that BCU owns pre-petition distributions and redemptions. [*Id.* at 31]. In making all these arguments, however, Branham relies on Plan language that states: "Any of the Debtor's assets, which are not being sold to Whitestown … shall be retained by the Debtor." [*Id.* (quoting Plan at 1-2, Branham App. 614-15 (*see* Filing No. 9-5)]. But the bankruptcy court ably considered the ambiguity in this very language and other ambiguities in the Plan [*see* Plan, §§ 9.3 and 9.4, Filing No. 9-5, p. 16, Branham App. 629], and found that *all* of BCU's assets were sold to Whitestown; no assets were retained by BCU. [Filing No. 18-3, Branham App. 2376-77]. And Branham has not shown any error in the bankruptcy court's determination that the Plan did not sufficiently reserve any of BCU's choses of action against Newland that arose prior to confirmation.

Branham conditions its right to garnish and attach Newland assets on its belief that BCU holds Newland assets. [Filing No. 8 at 29-30]. While Branham correctly argues a

---

[16] A "chose in action" is the right to bring an action to recover a debt, money or thing. Black's Law Dictionary (10th ed. 2014); *see also Carhart v. Carhart-Halaska Int'l LLC*, 788 F.3d 687, 691 (7th Cir. 2015) (a "lawsuit" is a "chose in action" and form of intangible property).

creditor is not barred from pursuing claims that arise post-petition, *see In re Bahary*, 528

B.R. 763, 773 (Bankr. N.D. Ill. 2015), that rule is inapplicable here because Branham

seeks to pursue claims that arose pre-petition.

Finally, Branham argues that the bankruptcy court erred in dismissing the

complaint before addressing if the Confirmation Order was the equivalent of a civil

judgment that would lapse or expire after September 14, 2014, unless renewed or

extended under Indiana law (the "judgment renewal question"). [Filing No. 8 at 21].

Once the bankruptcy court decided that Branham lacked standing and dismissed its

complaint, the court had no obligation to consider the issues Branham raised in its

complaint. Therefore, the bankruptcy court did not err in declining to address issues

raised by Branham.

Accordingly, the court concludes that the bankruptcy court properly dismissed

Branham's AP-168 complaint under Fed. R. Civ. P. 12(b)(6) for lack of standing.

### C. SANCTIONS

The last matter for consideration is sanctions. BCU sought sanctions under the

bankruptcy court's contempt powers and its "inherent" powers to impose sanctions, both

of which fall under 11 U.S.C. § 105(a). The bankruptcy court found that the Plan and

disclosure statement contained several ambiguities regarding whether BCU's assets were

retained by BCU or vested in Newland upon confirmation and found the Plan made an

ambiguous reference to BCU reserving the right to enforce, waive, or assign claims

and/or causes of action, but neither scheduled or referred to such causes of action. The

court also found that the Confirmation Order did not resolve those ambiguities.

Therefore, it determined that the Confirmation Order did not make an "express and unequivocal command" regarding such matters.  [Filing No. 18-6, Branham App. 3540].

BCU also argued that Branham violated the Confirmation Order's discharge and permanent injunction provisions in Section 11.2 of the Plan.  The bankruptcy court rejected Branham's argument that it did not violate the discharge injunction because BCU was statutorily prohibited from receiving a discharge.  The court also rejected Branham's argument that Section 11.2 did not apply to Branham because it was neither a creditor of BCU nor assignee of Newland.  [*Id.* at 3542].  The bankruptcy court determined that the latter argument "speaks to the bad faith of Branham in these proceedings."  [*Id.*] Nonetheless, the court's decision lacks clarity as to whether its sanctions order was based on its contempt powers.  [*See* Filing No. 18-6, Branham App. 3540-3548].  The absence of any specific finding that Branham was in contempt may suggest that it was not.

The bankruptcy court also addressed its inherent "power to sanction litigants who intentionally abuse the bankruptcy process and multiply proceedings in an unreasonable and vexatious manner."  [Filing No. 18-6, Branham App. 3542 (citing *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997).  The court found that Branham abused the bankruptcy process based on the following:

> Although Branham's alleged "unreasonable and vexatious" conduct originated in the state court with the 001 and 517 cases, it continues to rely here on the legal theories asserted there. BCU must be found to have undistributed assets if Branham's garnishment action is to have any traction against BCU. The only alleged property to pursue consists of allegations of prepetition causes of action based on nonbankruptcy law. Branham unabashedly continues to beat the "viability of IURC orders" drum and continues to adhere to the "violation of applicable nonbankruptcy business law" mantra even though both … were either pre-empted upon confirmation

of the plan or were made inapplicable because BCU no longer operated a
utility.

[Filing No. 18-6, Branham App. 3544]. The court also relied on the following facts: (1)

Branham sought to hold BCU in contempt for violating the Confirmation Order, despite

that Branham was not a creditor of BCU's or entitled to a distribution; (2) Branham made

a specious argument about BCU's standing but named BCU a garnishee defendant; and

(3) Branham participated in the bankruptcy case and failed to pursue its claims while

Newland still had funds to pay Branham. [*Id.*] Furthermore, the bankruptcy court

determined the allegations in the 001 and 517 state court cases "directly implicated the

very essence of the confirmed plan-distribution to professionals, creditors, and interest

holders." [*Id.* at 3547]. Indeed, the bankruptcy court found that "Branham challenged

the legality of distributions made under [its] orders and the recipients' rights to receive

them" and Branham's state court actions "essentially attempted to reverse distribution

under a plan that had been confirmed seven years earlier in this chapter 11 case in which

Branham participated and was held to have no claim." [Filing No. 18-6, Branham App.

3641, 3645]. It appears that the bankruptcy court's determination to sanction Branham

may have been based solely on its finding that Branham abused the bankruptcy process.

Further clarification of the basis or bases for the bankruptcy court's sanctions order may

be provided on remand.

The bankruptcy court concluded that Branham's legal theories were unreasonable

and vexatious and therefore imposed sanctions. Branham relentlessly argues it has not

and is not challenging the validity of the Plan or any other order issued in the BCU

bankruptcy (before reopening). [*See, e.g.*, Filing No. 17 at 30]. But that is precisely what it is and has been doing. For example, during the August 2012 hearing, Branham's counsel conceded that Branham was "challenging distributions that were made that we argue, pursuant to a construction of your plan and confirmation, were not permitted to be made in the fashion that they were made." [Filing No. 23-3, Branham App. 5534]. He then agreed that Branham's argument was as follows: "the distributions … to Newland were illegal transfers" because they did not comply with state law, the Plan, and IURC orders. [Filing No. 23-3, Branham App. 5540]. Branham can call it what it will, but it *is* attacking the Plan and Confirmation Order.

      The Supreme Court recently addressed a federal court's "inherent authority" to sanction a litigant for bad-faith "conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, --- U.S. ----, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers v. NASCO, INC.*, 501 U.S. 32, 44-55 (1991)). The court may order a litigant to pay the other side's legal fees and costs. *Id.* However, "such an order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Id*. at 1184. This means "a causal link between the misconduct and the fees[.]" *Id.* at 1186; *see also id.* at 1186 n.5 (stating that rule-based and statutory sanctions also require a causal connection). "This but-for causation standard generally demands that a [federal] court assess and allocate specific litigation expenses"; however, "'[t]he essential goal'" is "'to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Thus, the court "'may take into account [its] overall

sense of a suit, and may use estimates in calculating and allocating'" fees. *Id.* (quoting

*Fox*, 563 U.S. at 838).

In its order on sanctions, the bankruptcy court noted that BCU's summary

judgment motion "went far beyond" merely requesting the court to interpret the

Confirmation Order and determined that "[m]any of the attorney fees incurred in this

action were the result of BCU's over-reaching." [Filing No. 18-6, Branham App. 3644].

Then the court found a sanction of $38,924 was appropriate, but did not provide any

explanation as to how it arrived at this particular amount. [*Id.* at 3648]. Having reviewed

BCU's counsel's affidavit and supporting fee documentation [*see* Filing No. 18-6,

Branham App. 3589-3616], this court is unable to determine how the bankruptcy court

found that amount to be an appropriate sanction. At the time of the sanctions hearing,

BCU's counsel's fees for work in the reopened bankruptcy case totaled $88,343.75.

[Filing No. 23-3, Branham App. 5869]. It is clear the bankruptcy court awarded only a

portion of the fees incurred and requested, but without further explanation, the court is

unable to determine that the sanction award represents the fees that BCU would not have

incurred but for Branham's bad faith.

BCU indicated that it would seek double fees and costs for a frivolous appeal

pursuant to Bankruptcy Rule 8020. Because the court has found that the case should be

remanded to the bankruptcy court, sanctions for a frivolous appeal are not warranted.

## V.    CONCLUSION

Branham's request for oral argument is denied, the bankruptcy court's dismissal and summary judgments will be affirmed, and the case is remanded to the bankruptcy court for further consideration of sanctions consistent with this decision.  The bankruptcy court should clearly state its findings, including its basis for imposing sanctions, and its reasoning to impose sanctions of a particular amount.

**SO ORDERED** this 22nd day of January 2018.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record